IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT SLOGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CAUSE NO. 04-CV-291-WDS |
| | ) |
| MIDWEST MEDICAL SUPPLY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant's motion for summary judgment (Doc. 29) to which the plaintiff has filed a response (Doc. 36), and the defendant a reply (Doc. 37).[1]

Plaintiff filed a three count complaint against the defendant, seeking recovery for injuries allegedly related to contrary decisions by his employer. Count I alleges that the defendant wrongfully terminated his contract for work with the Sisters of Mercy Hospital group without just cause. Count II alleges that defendant failed to pay him a commission of 2.5 % of gross profits for managing accounts, and Count III alleges that the defendant discriminated against him on the basis of age. The defendant seeks summary judgment on all counts.

## I. BACKGROUND

Plaintiff is a 59 year old male who began working for the defendant, a medical supply company in 1975. Plaintiff received several promotions and eventually became a vice president of Midwest Medical. In 1996 he became group Vice President over the Unity Health Care System. In September of 2000, the Unity system dissolved and plaintiff became Vice President of Acute Care. He retained the same salary but his responsibility changed, and extended outside

---

[1] Defendant Reeve was dismissed by plaintiff on July 12, 2004, leaving only Midwest Medical Supply Company defendant in this action.

the Unity system. In March of 2002 one of the accounts plaintiff had was the Sisters of Mercy account, which was part of the former Unity Health System. Plaintiff received commissions on the Sisters of Mercy account until September of 2003, at which time the defendant took the account away from him. The record reveals that the account was removed from plaintiff for a number of reasons. The defendant determined in February of 2003 that they were going to put into effect a price increase on sutures and plaintiff was instructed to notify the Sisters of Mercy in writing of the intended increase. Sisters of Mercy advised plaintiff that they would give their business to another company. To keep the account, in April of 2003, the defendant decided that the price increase would not go into effect and instructed plaintiff to so notify Sisters of Mercy. Plaintiff did not notify the customer in writing of the fact that the price increase would not happen, and, according to Sisters of Mercy, the fact that the price increase had been rescinded had never been communicated to them. The defendant removed plaintiff from the Sisters of Mercy account in September of 2003 and he no longer received commission payments on that account.

On November 25, 2003, plaintiff filed a Charge of Discrimination with the EEOC, alleging he was removed from the Sisters of Mercy account because of his age. The EEOC issued plaintiff a Right to Sue letter, and plaintiff subsequently filed this complaint

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Popovits v. Circuit City Stores, Inc.*, 185

F.3d 726, 731 (7th Cir. 1999). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1999) (*citing Celotex Corp.*, 477 U.S. at 323).

Once a motion for summary judgment has been made and properly supported, however, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See Lindemann*, 141 F.3d at 294. In determining whether a genuine issue of material fact exists, the Court should construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor. *See Popovits*, 185 F.3d at 731. "[T]he mere existence of some alleged factual dispute between the parties," however, is not sufficient to defeat a motion for summary judgment. *See id*. (*quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986)). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).

### III. ANALYSIS

#### A. Count 1 - Wrongful Termination of Sisters of Mercy Account

Plaintiff claims in Count I that defendant breached a contractual obligation to him by removing the Sisters of Mercy account from plaintiff without just cause. He asserts that the Compensation Program which the defendant established is an enforceable contract which gives him an entitlement to that account, and the commissions on that account. The defendant asserts that the plaintiff was removed for, inter alia, failing to communicate that there would not be a price increase on its sutures.

The Court's jurisdiction over this claim rests on diversity of citizenship; therefore, state

law governs the determinations herein, and Illinois principles of contract construction apply. *See Boatmen's Nat'l Bank of St. Louis v. Smith*, 835 F.2d 1200, 1202 (7th Cir. 1987). Overall, the party seeking to enforce an agreement has the burden of establishing the existence of the agreement. *Reese v. Forsythe Mergers Group, Inc.*, 682 N.E.2d 208, 213 (Ill. App. Ct. 1997) (*citing Commonwealth Edison Co. v. Indus. Comm'n*, 521 N.E.2d 159, 161 (Ill. App. Ct. 1988)).

A review of the Compensation Program document reveals that it simply does not contain a "just cause" provision, or any other language which would rise to the level of "just cause." Procedural requirements set forth in a company manual must be complied with prior to a proper termination of an employee, if the manual is determined to be an enforceable contract. *See Ahlgren v. Blue Goose Supermarket, Inc.*, 639 N.E.2d 922 (1994) (stating that "articulated procedures are a fundamental and necessary part of an employment contract which provides for an employee's discharge or dismissal only upon *just cause*." *Id.* at 927 (emphasis added)).

Furthermore, in his deposition plaintiff admitted he was an at-will employee who could be terminated by defendant or quit at any time, without liability (Sloger dep. at 246-47). Plaintiff acknowledged at his deposition that defendant had the right to remove an account from his area of responsibility at any time, that the listed accounts were not intended to be plaintiff's for life, and that plaintiff was only entitled to commissions on accounts for the time period in which he serviced such accounts (*Id*. at 249-53). Thus, plaintiff has failed to establish the existence of any contractual provision prohibiting defendant from removing the Sisters of Mercy account from plaintiff, and defendant is entitled to judgment as a matter of law with respect to Count I of plaintiff's claim.

### B. Count 2 - Wrongful Denial of Commissions

With respect to the claim of wrongful denial of commissions, plaintiff also relies on the

4

March 21, 2002 Compensation Program in claiming that the defendant breached a contractual obligation to plaintiff by failing to pay plaintiff a commission of 2.5% of gross profit for managing accounts within various territories across the country. This claim is also governed by Illinois law. To form a valid contract between two parties, there must be mutual assent by the contracting parties on the essential terms and conditions of the subject about which they are contracting. *Reese*, 682 N.E.2d at 213. Accordingly, when determining whether an enforceable contract exists, the Court must look at the intent of the parties, as evidenced by the language in the document. *Id*. Although some of the terms of a contract may be missing or left to be agreed upon, the parties' failure to agree upon an essential term of a contract indicates that the mutual assent required to make a contract is lacking; therefore, there is no enforceable contract. *Rose v. Mavrakis*, 799 N.E.2d 469, 473 (Ill. App. Ct. 2003).

Further, the essential terms of a contract must be definite and certain in order for a contract to be enforceable. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987). A contract "is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do." *Academy Chicago Publishers v. Cheever*, 578 N.E.2d 981, 983 (Ill. 1991) (*citing Morey v. Hoffman*, 145 N.E.2d 644 (Ill. 1957)). If, however, the essential terms of the agreement are so uncertain that there is no basis for the Court to determine whether the agreement has been kept or broken, there is no contract. *Id*. at 984.

In plaintiff's response, he did not address the issue of the potential uncertainness of the alleged agreement he relies upon in his complaint; therefore, plaintiff remains bound by his deposition testimony. In his deposition, plaintiff stated he had no idea what the paragraph within

5

the March 21, 2002 Compensation Program which referenced a growth commission of 2.5% meant (Sloger dep. at 276). In addition, plaintiff admitted the language was "totally vague" and that he did not have any agreement with defendant as to the meaning of the alleged contractual language (*Id*. at 276-77). Further, plaintiff testified that he did not believe that anyone had an understanding as to the meaning of the very language on which he relies to support his claim (*Id*. at 278), and that the 2.5% growth commission provision is vague and incomprehensible (*Id*. at 276-78), and this is an essential term to the alleged contract.

Therefore, the record reveals that there was no meeting of the minds between the parties in this case. Further, the essential terms of the alleged contract are vague and indefinite; therefore, the Court cannot determine if the agreement has been kept or broken. Thus, it is clear the document plaintiff relies upon in his complaint does not constitute a valid and enforceable agreement under Illinois law, and Defendant is entitled to judgment as a matter of law with respect to Count II of plaintiff's claim.

**C.  Count 3 - Age Discrimination**

**1.  Claims Not Included in the EEOC Charge**

Filing an EEOC charge is a prerequisite to filing suit under Title VII and the Age Discrimination in Employment Act (ADEA) in order for the EEOC to have a chance to settle disputes before lawsuits are undertaken. *See Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1003 (7th Cir. 1994); *Flannery v. Recording Indus. Ass'n. of Am.*, 354 F.3d 632, 636 (7th Cir. 2004). To prevent circumvention of the EEOC's investigatory and conciliatory role, only allegations fairly encompassed within a Charge of Discrimination filed with the EEOC can be pursued in a subsequent complaint filed in federal court. *Chambers*, 17 F.3d at 1003; *Conley v. Village of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000). A plaintiff may pursue a claim that is

6

not explicitly included in the EEOC complaint, but only if the allegations fall within the scope of the charges contained in the EEOC complaint. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). In order for allegations to fall within the scope of the charges in the complaint, they must be "like or reasonably related to" those charges contained in the EEOC complaint. *Id*. (*citing Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995)). The Court must determine if the current claim could have reasonably developed from the EEOC's investigation of the charges before it. *Id*.

In the current case, plaintiff's Charge of Discrimination is specifically limited to plaintiff's claims concerning the September 10, 2003 removal of the Sisters of Mercy account from plaintiff. Not only is this clear from a reading of the charge itself, but also plaintiff admitted this fact in his deposition (Sloger dep. at 127-28). Plaintiff alleges he was discriminated against on the basis of his age as a result of certain adverse employment action, including: denial of a 2.5% commission of gross profit for managing companies in certain states, his removal from his office, loss of title as Vice President and his exclusion from communications, meetings and an active participation as a member of the sales team.

The additional claims of discrimination made by plaintiff in this complaint are not within the scope of the EEOC complaint, as these claims are not "like or reasonably related to" the claim within the EEOC complaint concerning plaintiff's removal from the Sisters of Mercy account. Plaintiff's removal from the Sisters of Mercy account was a discrete action, taken at a definite time, and the current claims would not reasonably develop from the EEOC's investigation of this action. These additional claims are unrelated to the original, as each claim implicates different individuals and stems from different conduct. Because plaintiff did not raise these additional claims in his complaint with the EEOC, nor are they fairly implied, plaintiff is

precluded from bringing these claims in this complaint. Thus, defendant is entitled to judgment as a matter of law with respect to plaintiff's claims of discrimination that were not included in the EEOC charge.

The Court further notes that plaintiff included factual assertions relating to the circumstances under which Plaintiff was put on the March 2002 Compensation Program. These facts pertain to matters which occurred more than 300 days prior to the November 25, 2003 filing of Plaintiff's EEOC charge. In Illinois, an employee may sue under the ADEA only if he files a charge with the EEOC within 300 days after the "alleged unlawful employment practice." *See Flannery*, 354 F.3d at 636. There is nothing to establish that these were an ongoing series of violations which would fall within the 300 day period. Therefore, any claims related to the manner and circumstances under which he was placed on the Compensation Program are time-barred and not actionable.

### 2. Removal of Sisters of Mercy Account

In order to establish a claim of discrimination in violation of the Age Discrimination and Employment Act (ADEA), 29 U.S.C. §§ 621(a) *et. seq.*, a plaintiff must use either the "direct method" or the "indirect method" of proof. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003) (*citing Cianci v. Pettibone Corp.*, 152 F.3d 723, 727-28 (7th Cir. 1998)).

### a. Direct Evidence of Age Discrimination

Under the direct method of proof in employment discrimination cases, "a plaintiff may show, by way of direct or circumstantial evidence, that his employer's decision to take an adverse job action against him was motivated by an impermissible purpose, such as race, national origin, or age." *Cerutti*, 349 F.3d at 1061. Direct evidence is evidence that would prove discriminatory conduct on the part of the employer without reliance on inference or presumption.

*Id*. In short, "[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based on the prohibited animus.'" *Id*. (*quoting Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir 2003)). In order to prevail under the direct method of proof using circumstantial evidence, the circumstantial evidence "must point directly to a discriminatory reason for the employer's action." *Id*.

Plaintiff has offered evidence of two remarks by non-supervisory, liaison employees, Ms. Buis and Ms. Grotts, as evidence of age discrimination. The Seventh Circuit has specifically held that "an employer statement that reveals hostility to older workers" may constitute direct evidence of discrimination. *Wichmann v. Bd. of Trustees of S. Ill. Univ.*, 180 F.3d 791, 801 (7th Cir. 1999). Stray workplace remarks made by the decisionmaker, however, will not qualify as direct evidence of discrimination unless the plaintiff can show that the remarks were related to the employment decision at issue. *Eiland v. Trinity Hosp.*, 150 F.3d 747, 751 (7th Cir. 1998). Further, when such statements are made by a nondecisionmaker, normally they cannot provide the basis for a determination of discrimination. *Id*.

In the current case, the comments of Ms. Buis and Ms. Grotts that: "when somebody gets as old as you, you have to watch that little muscle back there because you can't control it and you get that urge, it's going to come right out" and "yeah, if somebody is your age, you should at least get a flu shot for god's sake" are arguably statements that reveal hostility toward older workers. Plaintiff, however, has failed to establish that these remarks were in any measure related to the actions of the defendant to remove him from the Sisters of Mercy account. In addition, these remarks were not made by a decisionmaker, but rather by Ms. Buis and Ms. Grotts who are non-supervisory employees. Plaintiff failed to offer any additional discriminatory statements by either decisionmakers or nondecisionmakers. Thus, there is no direct

evidence that plaintiff was removed from the Sisters of Mercy account for discriminatory reasons.

### b. Indirect Evidence of Age Discrimination

Unlike the direct method of proof, the indirect method requires the plaintiff to first make a prima facie showing of discrimination. *Gusewelle v. City of Wood River*, 374 F.3d 569, 574 (7th Cir. 2004). To do this, "a plaintiff must show: (1) he is a member of the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) a similarly situated employee not of the protected class was treated more favorably." *Id*. If the plaintiff makes a prima facie showing of discrimination, the burden shifts to the defendant-employer to articulate a "legitimate, non-discriminatory reason for the adverse employment action." *Id*. Then, if the employer is able to do so, the burden shifts again to the plaintiff to present sufficient evidence that the employer's proffered reasons are merely pretext for discrimination. *Id*.

In the present case, plaintiff has clearly established the first and third elements of a prima facie case of discrimination. Plaintiff was fifty-six years old when he was removed from the Sisters of Mercy account, and age is a protected class. In addition, plaintiff suffered an adverse employment action, as the Sisters of Mercy account was removed from him, causing a reduction in his income.

Plaintiff has not, however, established the second or fourth elements of a prima facie case of discrimination because he failed to show he was qualified to manage the Sisters of Mercy Account. Although he communicated an intended price increase on sutures in writing to Mercy, the record reveals that he failed to communicate a rescission of this price increase in writing. The record reveals plaintiff's failure to communicate the rescission of the price increase caused

Mercy to remove substantial business from defendant. Thus, plaintiff has not established that he was meeting defendant's performance expectations or that he was qualified to manage this account.

Further, plaintiff has not presented any evidence of a similarly situated employee who was treated more favorably than him. Richard Hawkins, the employee promoted to the position of Vice President with defendant, is only six or seven years younger than plaintiff. This difference in age is not substantial, nor has plaintiff established that Mr. Hawkins was treated more favorably. In fact, plaintiff admitted in both his deposition and his answers to interrogatories that he is not aware of any employee who was treated more favorably.

In light of the fact that plaintiff has failed to establish a prima facie case with respect to defendant's removal of the Sisters of Mercy account, defendant is entitled to judgment as a matter of law on this claim.

## IV. CONCLUSION

Accordingly, defendant's motion for summary judgment is **GRANTED** on all counts.

The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   February 6, 2006.**

s/ WILLIAM D. STIEHL
        **DISTRICT JUDGE**
